Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention before the Court of Announcing the God Save the United States and this Honorable Court. Thank you. Thank you for being here. Everyone be seated. I'm happy to have you with us today as we hear two arguments and we will start with our first case, number 234688, United States v. Revels. And Mr. Sun, whenever you're ready. May it please the Court, I'm Paul Sun. I represent Jonathan Revels. Mr. Revels was convicted of possessing two shotguns after already having been convicted of a felony. That was a violation of 922 G1. Mr. Revels also possessed a handgun and he used that handgun to shoot and kill a Mr. Jason Hunt. When the District Court found what the applicable guidelines range would be, it applied a cross-reference to the voluntary manslaughter guidelines using section 2.2.1, 2.2, 2K2.1, parent c, parent 1. A cross-reference to the voluntary manslaughter guidelines. That was an error because the handgun, as would be required for the cross-reference, was not cited in the offense of conviction. Again, it was only the shotguns that were cited in the offense of conviction. Mr. Revels contends that the district court also erred in sentencing when it did not address his mitigation arguments. Instead, what the district court did was, based on its belief, without any facts in the record, that the state sentence to which Mr. Revels had been given, that he would not actually have to serve that sentence. And so, on that basis, the district court rejected the mitigation argument by his counsel. Can I ask you just a quick question about that? You've presented this issue where the district court, you say, with no basis, believes that your client would not serve his state sentence, that that's a substantive problem. It sounds to me kind of like a procedural problem if the district court relies on something that is not in the record to issue a sentence. Your Honor, I struggled with how to categorize that. I was confident in how I would describe that and whether that's more procedural because it's relying on something that's not in the record, and that would be a procedural, or it's basing something because it's not in the record, it's substantively unreasonable. And so I think perhaps it could be categorized under either. I put it under substantive, but the logic of it would equally apply as a procedural reasonableness argument, again, because there are no facts in the record that would support the belief that was repeatedly expressed by the district court that Mr. Revels would not actually have to serve his state sentence. Can I ask you another question about the state issue? So the record indicated that you were appealing the voluntary manslaughter conviction in state court on a sort of self-defense theory, but the North Carolina Court of Appeals decision does not appear to address any sort of self-defense theory. Did you just not make that argument on appeal? I didn't argue the state case. Well, did your client? I'm not asking whether you personally. Did your client just not raise that to the North Carolina Court of Appeals? All I know is what was in the court's order. And you agree that it doesn't seem to mention a self-defense argument? It did not. All it mentioned was scoring under the sort of the state parallel to our federal sentencing guidelines. Thanks. But it did resolve that issue. It's not the case that that's an open question whether he will, because he might win on appeal, the North Carolina Court of Appeals. They called it no-error, but they affirmed. Okay. Going back to the cross-reference, your argument is that because the gun used to shoot the victim was not the basis of the felon in possession charge, that that means the cross-reference is improperly applied? Is that what I understand your argument to be? Yes. So where is it, what's the basis of saying that if the shotguns, which were the basis of the felon in possession charge, what's the basis of saying they have to be the guns that were used to actually commit the killing in order for the application to apply? It's the plain language of 2K2.1C1. That was language added by an amendment, Amendment 784, that was to limit, according to the sentencing commission, the application of the cross-reference. And so what it did, it added the language cited in the offense of conviction. But it says cited in the offense of conviction. I agree with you on that. I mean, let me preface this question by saying I think the theory on which the district court applied this cross-reference is totally wrong and totally inconsistent with the language of the guideline. But let me ask you about the government's alternative attempt to salvage it on appeal. Let's posit that the revolver, which the actual shooting revolver, is not cited in the offense of conviction. And it seems to me that's what the district court relied on for the cross-reference, which it seems to me is totally wrong. But the government argues on appeal, but the shotguns cited in the indictment also meet this standard, right? Because where the defendant shoots one gun and then two seconds later shoots another and then 30 seconds later uses the second gun to shoot him, why isn't the first gun also used or possessed in connection with the offense of conviction, and those shotguns were cited in the indictment? First of all, in the amendment itself, the sentencing commission said that the handguns, or the two guns, at a minimum have to be connected, the two offenses. Well, you must be talking about the commentary because I'm looking at the language of the guideline and the language of the guideline. It's in the commentary. Okay. So the language of the guideline is used or possessed, and it seems to me that these shotguns were probably used and possessed in connection with the offense of the conviction. There is an example in the commentary which fits right in with the language, the way the sentencing commission anticipated and wanted it to be interpreted. That's example small Roman II I, firearm not cited in offense of conviction. And it actually talks, it's remarkable, it talks about a shotgun and a handgun. The shotgun is cited in the offense of conviction. The handgun isn't. And the example says, so the sentencing commission says in its commentary, that while the specific offense characteristic might apply, it would not apply the cross-reference because it's not cited in the offense of conviction. And, Your Honor, it would be our position that because the commentary is consistent with the language of the text of the guidelines, it's authoritative. And so it would be. Is that how we look at it? I've had this issue before, and I may be getting this wrong, but if we think the guideline language is unambiguous, don't we apply it, just that language itself? Yes. Okay. And if the language unambiguously, if we think, assume this, that it does not require a charge defense to be the weapon that is used to ultimately do the killing, but it is used as part of the episode in which that victim is ultimately killed, let's assume we think that's the way the guidelines read. I mean, I guess your argument is, well, it's ambiguous enough that we should look to the commentary as authoritative? Yes. What about the case law? Aren't there cases that talk about facilitation and things like that, that suggest something other than actual use in the killing? So that's one of the requirements. So the three requirements for the cross-reference are possession of a firearm, cited in the offense of conviction, and used in the commission of another offense. So, yes, used in connection with another offense, but it's not cited in the offense of conviction. That's our argument. And I can't address- I'm sorry. I thought your argument was that, I may be misremembering, that it wasn't obvious that the gun, and that the problem was that the shotguns here did not obviously facilitate the murder. I was addressing the new, in my reply brief, Your Honor, I was addressing the new argument that was advanced by the government.  The government- That's sort of an alternative argument. Yeah. The government at trial- Yeah, but I'm also looking at your, I'm literally looking at your opening brief. I mean, maybe in the context of aberrant, you make glancing references to this commentary, but you do not make this commentary argument in your opening brief that I see. I did not. Okay. So, you responded to the government's argument by accepting facilitation, and you admit that in your opening brief you didn't really argue there's no facilitation requirement. You're telling us that you think this unpublished opinion that aberrant is persuasive, which is an unpublished opinion that rejected a defendant's argument that the cross-reference didn't apply. The reason that aberrant has some effect here, Your Honor, is what the court came down to was it was the same firearm. Sure, but when I asked you the first question, you gave me a whole direct quote from the guidelines commentary that I do not see in your brief. Yes. Okay. I did not cite that in the brief. Despite the fact that, okay. It just, when I asked you this question, you seemed like, this is directly unpointed, proves why I'm right, so I went to look to your brief. It's like, where did I miss where they made this argument, and I don't see this argument anywhere in your brief. I didn't make the commentary argument because the government wasn't arguing in my opening brief. The government had argued at trial that it was the handgun. Okay, where's that argument in your reply brief? That there's no facilitation requirement. Oh, sorry, that even if it facilitates, it has to be in the indictment. I don't remember that argument from your reply brief either. What I said in the reply brief was to cite the commentary that it has to be the same weapon. Counsel, can I switch gears and go to the argument you made about the, I think, the district court, your challenge that didn't address your objections based on health matters?  As I understood what you said, you said that the court rejected that because of these statements about whether North Carolina would require the defendant to serve the entire sentence. I understood those to be separate issues coming in here. One, that your client made an objective and raised the issue of his health and how that should be considered in sentencing, and that that was not sufficiently addressed. And I thought there was a separate argument that, okay, the district court, and as Judge Harris said, I think it was framed as a substantive unreasonableness argument that the court considered what would happen in the North Carolina system without any evidence to support it. I thought those were separate issues, and so I may have that wrong, but that's how I thought you were arguing this when I walked in here. Your Honor, they're connected because the only thing the district court did discuss was this idea that, on its own thinking, belief, that Mr. Revels would not have to serve his state sentence. So it didn't address his health issues. It didn't address his post-sentencing rehabilitation. So failing to do either of those or both of those was a procedural error. But what the district court did instead was focus on this idea because counsel was arguing the state court imposed a long sentence, 89 to 119 months. Mr. Revels was in primary federal custody, so his state sentence was not going to start at all. I'm sorry to ask a question and cut you off, but I want to deal with the health issue and then come back to that. So I certainly acknowledge that the health issue was made. What I'm trying to figure out is whether the district court did enough. Certainly the district court didn't, in any sort of systematic way, respond. But I'm just kind of following along. The second part of the hearing, when the health issue is first made, the court says, I can't hear you, in response to the defendant. The defendant then kind of repeats that he's been trying to improve himself. The court says yes, gives a description of the first step at classes, does some other stuff and talks about health. And then the district court says, how old are you? And then he says 59. And then ultimately later he sentences him to Butner and orders medical treatment in the sentence. Now, it would be more helpful to everyone if he had given more. But is that not an indication that the judge heard, considered the health issues and issued a sentence denying those as affecting what the appropriate sentence would be? The indication by the court that it was recommending medical treatment and recommending placement at Butner was some indication that the court was considering health conditions. It arose that the issue of health conditions arose when the judge asked the attorneys, who was sick in this case? Well, he did do that. That came up in the first sentencing. But the main discussion in the first segment was really, it looked to me like the cross-reference. Although you're right, he did say who was sick, and that did come up. It looks like the main arguments for the health issue that your client made were at the second phase of that. And anyway, I don't mean to belabor the point. The question is, what does the district court have to do? We've got cases that say you need to respond. We also have cases that say if we can tell that the district considered it and addressed it, that might be sufficient. So I guess my question is, why isn't what he did sufficient? I agree, Your Honor. That latter proposition that the court stated, if the court can tell, this court can tell, that the district court did consider, that's sufficient. It doesn't need an elaborate discussion. It is our position that the district court needed to do more here than ask about his age and make a reference to a recommendation for medical treatment. Could I ask you just one thing? I don't need an answer now, I don't even want an answer now, but I want to make sure to ask you so you have some time to address it on rebuttal. Yes, sir. Let's assume for the sake of argument that I think this sentencing is completely inadequate and extremely problematic and I'm inclined to think that it was procedurally unreasonable. But it also occurs to me that if we vacate and remand for resentencing, it is entirely plausible that your client will get a longer sentence, a much longer sentence, because actually this actual sentence isn't that long given a lot of respects. And so I just want you to make sure that you, to address that your client is aware of that fact and still wishes to proceed. He is aware of that. There is a statutory maximum to his sentence, which is 120 months. He was sentenced to 84 months. Right. And it strikes me it easily could have been a lot closer to 120 than 84. It was the court's decision that the cross-reference, the appropriate cross-reference was to voluntary manslaughter. Sure, but a different district judge at a different sentencing proceeding could decide it's to second degree murder. Understood. That was the argument that the government advanced and probation took the same position, notwithstanding the fact that Mr. Revels was tried in state superior court for second degree murder and was found not guilty of that. None of which is binding on a district court in resentencing. I agree with that, Your Honor. Thank you. Thank you. May it please the Court, Jake Pugh on behalf of the United States. I'll begin with the cross-reference. The cross-reference is applied broadly. Actually, can I ask you to begin with something that matters to me in terms of what ultimately happens in this case? Absolutely. Am I correct that the district judge is recused from further proceedings in this case? That is correct. So we don't have to consider whether to reassign the same district judge yet again for an inadequate sentencing hearing? That is correct. Okay. Thank you. With regard to the cross-reference, it applies according to the commentary any time the firearm facilitated or had the potential to facilitate. You agree that's not what the basis of the application was at the trial level, correct? The district court didn't say that. The district court said that the voluntary manslaughter happened based on the state conviction. I don't know that it articulated in any detail exactly why it was applying. Yeah, and that may be an issue, but to the extent you can tell what the district court's relying on, it seems to be the conviction. And the conviction was with a different weapon. So, again, it may be an issue that we don't really know why the district court was doing it. It may not be. But to the extent you can tell, it seems like it's more related to the conviction, and the conviction was based on the handgun. So that seems like that basis would not be consistent with the cross-reference. Do you agree with that? I think that could be a fair reading of the transcript. A fair reading or the fairest reading? The fairest reading. Okay, so the fairest reading is the district court was dead wrong on the theory in which it applied this cross-reference. I wouldn't go that far. I think my response would be that it is obvious from the record the cross-reference applies anyway. And I would highlight, Judge Hytens, you mentioned that this was a new theory. This theory was actually raised below at the first sentencing. That's at JA 144. Who cares about the first sentencing? I care about this sentencing. That is fair. In any event. I'm sorry. Can I just, the facilitation standard, where is that coming from? Where are you getting facilitation? That is comment 14 to the guidelines. It says facilitates or had the potential to facilitate. This court in its own words in Blount said that basically the firearm needs to have some purpose or effect with regard to the other offense. I guess what I'm getting at is whether we need the commentary here or whether our cases have actually just defined in connection with, as it is used in the guideline itself, picking up on the Supreme Court's 924C cases to mean facilitate. Or whether you also are relying on the commentary for your argument. I don't think we have to rely on the commentary at all, but it does support our argument. Okay. We have published decision in Blount. Some purpose or effect with the circumstance where it is not in connection with being that the firearm is a result of accident or coincidence. Here we have firearms that did facilitate and we had firearms that had the potential to facilitate both these shotguns. I understand your argument on that point. I would be more comfortable if a district court had actually made that finding. I'm not sure it's like so 100% obvious that, I guess your argument is he took the victim's shotgun, not from the victim, the victim already wasn't holding it, took the shotgun, emptied it of ammunition, and put it further away. And that that kind of neutralized the threat and facilitated. I get it. It tracks. I'm not sure it's so 100% obvious that we don't need a finding on that. And I understand your concern. I think there is more evidence that does make it obvious. First, with regard to potential to facilitate, Mr. Rebels actually held the pistol and the loaded shotgun at the same time. This is the trial transcript, JA 102 and 103, when he says that he's going to blow the victim's brains out. He's holding a loaded shotgun, as he said this, shortly before when the victim is actually shot and killed. That shotgun is not there by accident. And certainly holding two loaded guns, he ultimately shot him with a pistol, he could have used that shotgun right there to shoot him. But he didn't. So how did it facilitate? For that point, I think we would rely on the guidelines because it says facilitate or potential to facilitate. If we switch over to facilitate by itself without potential to facilitate, then we have both these shotguns. One of them is handed to the co-defendant who hits. The defendant brings it to this. It's not there by accident again. Hands it to the co-defendant who strikes the victim. That's injuring a person leading up to the ultimate homicide. I would say that is part of the offense. I feel like I should be 100% clear. I'm just trying to figure out can we decide this case without walking into a Kaiser issue? Is it possible for us to decide this case in your favor without relying on the commentary? Yes, Your Honor. And if the concern is specifically the potential to facilitate language comes from the commentary, I don't think we need to rely on that. I think that is a very clear justification for this being in connection with, but the actual facilitation, bringing it and hitting him with the gun did facilitate. It was a step that led to the ultimate shooting of him. And then if we turn to the other gun, Mr. Revels picked it up. There's the incident where he threatens to blow his brains out holding it, but then he shoots off all the ammunition. And it wasn't just nearby. The victim was actually holding that unloaded shotgun when Mr. Revels walks up and kills him. Had Mr. Revels not possessed that gun in connection with that offense and shot out the ammo, that defendant would have had a potential opportunity to defend himself. That tracks with the case Nail that we cited in our brief. That's the case where there's a sexual assault and a person was possessing but did not brandish a gun during the sexual assault. The court in that case applied the cross-reference, quoting, without the use of the guns, the victim would not have been vulnerable to the sexual assault. Now, it's slightly different, but it gets to the same point. Had Revels not possessed that gun, the victim here would not have been vulnerable to that homicide. I'm going to ask you about a direct quote from the reply brief. I'm going to ask you to respond to it. The district court did not find that Mr. Revels' possession of the shotgun facilitated the voluntary manslaughter offense. The government does not cite any finding because there is no such finding in the record. See government brief Passam. Would you please respond to that assertion? I think the district court did not have a direct finding. In fact, it strikes me that, well, so do you think that the most directly on page point of the JA is I think it's 2, looking at it right now, 256? Is this where like probation just says like the voluntary manslaughter and the district court says I'll do that? Is that the closest the district court comes to ever actually addressing this question? I have not reviewed with that specifically in mind. Where is the closest place the district court explains why in the world it's applying this cross reference? I think you are correct. The district court ran with. This seems like a really, really, really terrible sentence I'm hearing. Your Honor, I won't dispute that we're not finding specifically about the gun, but. There's no findings about the gun? There's no actual explanation for why the district court imposed the sentence it did. The district court has this irrelevant back and forth about like the criminal history in this county. And then it proceeds to just say I'll do X. And actually has to correct itself because it says one thing and then has to correct the thing it says. I literally don't know why this district court imposed this sentence because the district court literally doesn't tell me. Your Honor, at JA 232, the district court in response to the arguments seeking this downward variance to time served when there's a homicide says I can't do that in this case. He went to trial. You know there's victim allocution. And references, as it does many times during the sentencing, this conduct. It calls it mayhem. This is a district court that's been through trials for this individual and his co-defendant. No, there is not a. This violates every single thing we tell district courts. And the Supreme Court has told district courts they're supposed to do at criminal sentencings. This court has also said that it can review from the overall context and it's not limited only. The overall context of the district court's repeated irrelevant disquisitions about things that don't involve this case. Your Honor. That's what we're supposed to infer from that. I wouldn't quite agree with that characterization. I do believe. You think the political and criminal history of this county is super germane to how long this individual should go to prison? I would not argue that the history of the county has a significant impact on the sentencing. But this was a lengthy sentencing. It lasted over an hour. And those were not the only conversations during this. Counsel, I know we have said that if you can pull it from the context, that's good enough. I mean, I really am concerned. I appreciate your efforts. But we just don't have much here besides kind of like sentence fragments. And I thought the list on page 29 of your brief was sort of a valiant effort. But you want us to rely on things like there's a victim impact statement and afterwards the district court says, all right, thank you? I mean, I just, it's not on you. But there's very little to work with here. Your Honor, the, I would note that the opening brief, the argument was that the district court failed to address those two non-frivolous arguments. The medical treatment and the First Step Act. But we've said we always have to assess whether the sentence is procedurally reasonable. And I have no idea how this sentence is procedurally reasonable. Counsel, isn't, I mean, look, I don't, the sentence is not your normal sentencing hearing. I think that's probably fair to say. But does, I mean, it seems to me in the context of the whole sentencing hearing, the district court does emphasize the violent nature of this crime. Absolutely. The district court does emphasize the defendant's criminal history. And maybe not as well as it could, seems to acknowledge the health issues that are complained about and do something that indicates that it heard those. And I do want to comment on the health care because that was one of the emphases of the briefing. I guess my point is, and I want you to get to that, but also the fact that the hearing has some dialogue that may have irrelevant matters, it doesn't necessarily mean there's not enough to say what the district court based the sentence on. It seemed to me there's information there. Now, again, far from textbook, but to say it doesn't have any information from which you can tell what the district court's doing, I think it might go too far. What's your position on that? I agree with that fully. The district court did address the prior conviction. It did address the offense conduct. It did address medical care, ultimately imposing, which it did not at the first sentencing, ultimately imposing a recommendation for medical treatment and a referral to Butner, both orally and in the judgment. That's at JA 257 and 260. That's after actually two interactions where health care brings up the one is what Your Honor pointed out where he asked for the age. The second one is on the same page they talk about the defendant having health issues. The judge puts this in context, and absolutely it could be more clear. This is after the judge has already announced how long the defendant is sentenced to? The judge did make a preliminary projection at some point. I would point out, though, the judge initially said 87 and adjusted that down to 84. Because he screwed up the guidelines. I don't think we can infer that from there. Doesn't probation have to correct the judge about the guidelines ranges? I think that happens during the hearing. Am I wrong? I might be wrong. During a hearing, probation, prior to the hearing, in fact, probation tells the judge what the guidelines were. I think the judge in this case did ask probation what the guidelines would be. I think this is the transcript where the judge says something and probation is like, wait, do you mean blank because you might have the guidelines wrong? No, this is the transcript where the judge changed it to 84 and the probation officer wanted to confirm that he intended to change it from 84 because previously he had talked about an 87-month sentence. So probation wanted to clarify that that was what he was doing. Previously the judge, in considering the sentence and the conviction, asked probation what the guideline range would be for voluntary manslaughter. And that was the thrust of this entire sentencing, this extended back and forth about whether that would be appropriate. And the judge ultimately said he was not going to drop this down to zero because of the potential for what might happen on the back end in a different court. So can I ask you about that because when I read the whole sentencing transcript, the only thing I am confident of is that the district court was very focused on this question of the consecutive state sentence and 100% convinced that's not going to happen. And so I guess my question for you is your colleague says that's not in the record, that that's not going to happen. Is your response that it is in the record somewhere or is it that it doesn't matter, the district court? He's been around for a while, he has reason to think that and that is good enough. I think there are two potential ways to come at it. One is that it doesn't matter. The district court is in charge of federal court. He has to take responsibility for the crimes that are charged that he was convicted of. That's what he says. Had he said that, had he said... That's irrelevant. Right. Who's to know what will happen next? He doesn't say that. He says, I am here to tell you he's not serving one day of this state sentence and on that basis, my sentence is 84 months. So is that in the record? He says it is a collateral matter. And I'm sorry, I don't have the slide in front of me, but he specifically says it's a collateral matter. He says that I'm not your problem, they are your problem. If they want to say that it is consecutive, that is not my jurisdiction. Take that up with them. I have to be responsible for... You don't think that he says he's not serving that time? He says if the state comes in later, if the state comes in later and wants to tack it on, I can't help that. Wait, doesn't the district court flat out say, I do not believe that will actually happen, you will never convince me. The district court basically says that. I have no doubt that he did not believe it, but he did acknowledge that there was a possibility. You don't think he relied on that? The district court, I think we can all agree, the district court said he's not serving a state sentence. It's not coming after you. But you don't think the district court relied on that in imposing the sentence? No, not at all. He says... What if we disagree with that? I'm trying to get to Judge Harris's question about, assume we think the district court relied on that in some way. It may be part of the... To me, it's all a little bit hard to figure out exactly where it's coming into play because it was in response to the argument that the cross-reference shouldn't apply. And the effect of that would be a guidelines sentence that would essentially result in no more prison time. And so it kind of came up in that context. And I think the defendant raised, yeah, but there's a state sentence. And then to me, whether he equivocated at times, certainly at other times he said they're not going to serve that sentence. So I'm trying to figure out, is that a problem? I mean, if someone is seeking a concurrent sentence on the ground that there's a state sentence that must also be served, is it legally improper to consider the likelihood of what might happen in that state jurisdiction's prison sentence? Is it legally improper to consider it? I think the judge absolutely can consider it, but I don't think there's anything improper about him considering it and looking forward and saying, I cannot be certain about what's going to happen. The defense attorney said during this hearing that they have an active appeal. So if we imagine hypothetically the district court did listen to him and said, you know what, I'm going to actually zero this out or do time served, and then that appeal is successful, well, the defendant's out. They're not coming back to district court and saying, actually, we were wrong. He's not going to serve that sentence. Let's have a redo. The district court has to protect against that. And as he said, and these are the reasons he said, he went to trial. There was victim allocution. There was this incident with the mayhem. Yeah, he has the medical conditions, but this is a serious crime. And the only update since the first incident we did is this person went into state court and got convicted beyond a reasonable doubt of voluntary manslaughter. It seems like the way to address it, if your position is that he can consider it in connection with what's happened, is just to acknowledge what seems kind of plain is that he did consider it. He didn't just consider it. He seems to all but say, or actually not all but, he seems to say it's not going to happen. And our real question is, can he say that just based on his experience, or must there be some affidavit or research about sentences in North Carolina that is an evidentiary matter he relies on? To the extent he relied on the possibility that this would not be, or even in his view, the likelihood that this would not be served, I think he can rely on his experience. But he does acknowledge that it is possible it might be served, but he had to protect against the possibility that it would not. We'd ask that the court affirm. Thank you. May it please the court. What the district court understood that the government was arguing at trial was that the handgun was the weapon in question, and that was the basis for the cross-reference. Wait. At trial or at sentencing? Because it doesn't really matter what they were. At sentencing. At sentencing. Okay. Thank you, Your Honor. And how do I know? Okay. One of the things that's very challenging for me about this is people are asserting lots of things about what people thought or argued, and we're not citing transcript pages where people actually. I've got that right here, Your Honor. Where? Thank you. Wonderful. This is page JA-256. Okay. This is the government arguing. An 84-month sentence would be appropriate in federal court, and whatever the state of North Carolina does, the state of North Carolina does. But it doesn't change the fact that we are here under our rules, and there's a valid cross-reference for the possession of a gun by a convicted felon that was used to kill someone. And the used to kill someone can only be referencing the revolver. Yes. Okay. And then it is the next page, JA-257, where the court announces that it, I believe, the appropriate sentence in this case, taking all things into consideration, and the conviction here is 84 months. So immediately after that is when he decides. So he's clearly basing his cross-reference. I think that's compelling, and we kind of talked about, I think I talked about to your colleague that the best reading, and you may have made it even more than the best reading, is that he relied on the fact, he said, relied on the argument that the handgun was the basis of the killing and the one he possessed was the handgun. So assume he's wrong there. That was an erroneous application of the cross-reference. We still can't affirm if it's obvious that the shotguns were used in connection. Legally we can do that, right? So the question is whether under this record it's obvious that the shotguns were used in connection with the offense. And I wanted to highlight, Your Honor, that language, because that's the language, in connection with. This facilitate, and the court has engaged with the United States on commentary. But the language in the guidelines is in connection with. And we've defined that as a court, so we've got the language of the guidelines in our decisions, and I don't have all that at my fingertips. But assume that permits us to consider a gun that was not actually used to do the killing. Isn't our standard, you know, whether the record's obvious that the shotguns were used? It has to be so obvious. That's the language from the Mitchell case. What's your argument that it's not obvious? The guy just said he's sitting there holding two. He's beating the guy up with it. I mean, how is that notówhy is that not obvious that it was used as part of this episode where the guy was shot, even if it was not the weapon that he actually pulled the trigger on? The only weapon that he used to shoot was the handgun. He didn't have any of the otheróhe didn't have the shotguns at the time he shot. And to Your Honor's point, what this court has said in connection with means, purpose, or effect, the purpose of the handgun shooting is not facilitated, is not supported, is not helped by having held at an earlier point in time the shotgun. That's not obvious. Yes, this is all going on, but by the time the incident at issue, what the state court jury found was voluntary manslaughter was he had only the handgun, and he shot Mr. Hunt with the handgun. It's not in connection with, it doesn't help, it's not for the purpose. It doesn't help the purpose. That's the language that the court has used. The 84-month sentence that the court imposed here was an unreasonable sentence and an abuse of discretion, first because it incorrectly calculated the guidelines range, second because it did not address Mr. Revels' mitigation arguments, and the only way it did address the mitigation arguments, the principal argument, was he's got this very long state sentence, and because he's under primary federal custody, he's not going to start serving that sentence until the federal sentence has ended. The only way the court addressed that mitigation argument was by saying, I don't believe he's going to have to serve the state sentence. There's no facts in the record supporting that. That's an erroneous finding, and that makes it, again, an abuse of discretion. Thank you, Your Honors. Thank you very much.
judges: Pamela A. Harris, A. Marvin Quattlebaum Jr., Toby J. Heytens